You're coming through loud and clear, both of you. So, Mr. Long, I think you go first. Yes, yes, thank you very much. And this is an argument in the Camacho matter. Okay. Yes, for the record, my name is Andrew B. Long and I'm the counsel for Jesse J. Zapato Camacho. This appeal concerns the conviction of Jesse J. Zapato Camacho, a first-degree murderer who has been caught 14-year-old E. Ian Delacruz stabbed 13-year-old Antonio Sablon 37 times. Jesse is currently serving a 45-year sentence. The conviction should be reversed on grounds including impromptu philosophical conduct, doing closing arguments, the failure to provide Jesse a juvenile certification hearing, denying Jesse the defenses available at common law, and convicting Jesse on the basis of his association. In this case, doing the closing arguments, the prosecution committed several what we believe are improper comments by one, vouching for the credibility of Ian Delacruz, commenting on evidence not admitted to a trial, urging sympathy for the victim, inflaming the passions of the jury by stressing Jesse's gang association, expressing an opinion on Jesse's guilt, and commenting on Jesse's post-arrest silence. With respect to these particular comments, we note that in his decision, the Commonwealth Supreme Court stated that and recognized that the Commonwealth had to argue Ian was telling the truth in order to secure Jesse's conviction. This statement is located on page 29 of the excerpt of the record. And in the process of so arguing, we consider the prosecution vouched for Ian's credibility at least five different times during the course of closing arguments. Now, given the fact that this trial was only roughly one day, and it consisted of only one vivid, we believe that the vouching for the credibility of Ian did not be deemed a hominid error, and it is particularly true that, in our way, the uncooperated testimony of Ian would serve as the primary basis for the conviction against Jesse. So the commenting on Ian's credibility did not be deemed to be a hominid. What in particular do you contend that the prosecutor said that implied out-of-court knowledge of Ian's veracity? Well, the out-of-court statement, the comments made on the out-of-court statement related to the prosecution's rebuttal argument, wherein the prosecution was stating that, well, we also have autopsy reports, photographs, and other types of evidence. Well, yeah, but the district court or the trial judge, excuse me, cut that off before he even said anything, and that was with respect to the stab wounds, which were manifestly in evidence anyway. I guess my question meant more. In that case, even though the trial judge cut him off, I think that there at least should have been a curative instruction given to the jury to disregard the references to the autopsy report and the other evidence. Well, we can't. Okay, my question, Mr. Long, had gone more to the statements that you contend amounted to vouching. And so I am wondering what in particular you say, in your view, the prosecutor said about Ian's credibility that gave an impression that it was derived from out-of-court knowledge rather than from the evidence. From out-of-court knowledge, I can't point to any specific statement that would say that the vouching derived from out-of-court knowledge as much as the prosecutor giving his own opinion as to the truthfulness of Ian's testimony. For instance, there are statements from which he said that Ian, he has no motive to lie to you about what happened. And I find him to be a very believable witness. So he, in my opinion, is a very believable witness. But if those statements in context were expressing an opinion based on the evidence, then what is improper about that? Okay, well, I will take the position that these statements were not based on the evidence. The fact of whether a person was telling the truth or he has no motive to lie to you, I don't see how such a statement can be based on the evidence that was submitted in court. Because this was the person that actually stabbed Antonio 37 times, and then there was just no basis in the evidence to just say he has no motive to lie. There's no basis in the evidence for the prosecution to even express that sort of a personal opinion to the jury in this particular case. Okay. In addition to the vouching comments of the prosecutor, we believe that the prosecution committed those misconducts was trying to inflame the passion of the jury by stressing he and the gang association throughout the closing argument. In the case of United States v. Easter, which I believe Jeff Levy was on the panel in that case, it was recognized that simply referring to a defendant as a gang member can cause prejudice in some jurors. Now, with that fact in mind, this court has recognized in United States v. Takahashi that when there is gang-related evidence that's submitted to court, there should at least be a cautionary instruction given that with respect to this case, it only lasted roughly one day and consisted of principally uncooperative testimony of the person who actually did the stabbing. We think the constant reference to gangs in the closing argument was meant to and did inflame the passions of the jury, and we believe that that cannot be deemed harmless in such a case such as this one here has. It is just based purely on the credibility of one particular witness. Well, you don't contend that the reference to gang affiliation was entirely irrelevant, I assume, as it bears on N's motive and why he may have done what he did. Yes, we do. I believe we challenge that on motive because we recognize that gang affiliation can be admitted evidence used for motive that was recognized in the case of Sagan, United States v. Santiago, because he himself was on the panel in that case. However, in that case, the motive, it was admissible to show the motive for the person perpetrating the act of the crime. It wasn't used to show the motivation of a third party, which is the case we have here. They were saying the gang affiliation evidence wasn't used to show any motive for Jesse at all. They were saying, oh, this is to show the motive that Ian Dell approves, but the fact that Ian Dell approves was not on trial in that case. It was Jesse who was on trial. So since the gang affiliation evidence was not going to Jesse's motive, we think that it was improper because what motivated Ian was not being relevant for purposes of the charges against Jesse. And this is crucial when considering that this case was based on the allegation of aiding and abetting. In the sense that this circuit has recognized that gang evidence did not, if it is a gang affiliation or gang membership in and of itself alone, did not be used to establish aiding and abetting the condition of a crime. And in this case, when you're using the gang evidence to show not the motivation of the defendant, but the alleged mental state of motivation of someone else, we think it is improper in the context of this case. And furthermore, we think that the heavy reliance on this association actually began to imprint on the First Amendment in the sense that that was used principally for the basis of the condition. Because why else in such a short trial with a prosecution doing clothing arguments to reference gang, gang, at least around 25, it was surely to do no more than to prejudice Mr. Colaccio. For instance, at the very beginning of the clothing argument, the prosecution states, well, at the ordeal, you won't mention it, you weren't aware that there's gang activity outside there. Now you know there's gang activity outside there. That, at the very beginning of the prosecution's clothing, shows that they were using gang association as the primary basis to obtain the conviction against Mr. Colaccio. And to this extent, in the Circus' decision, United States v. Easter, it was stated that the gang evidence was not improper. Well, among other things, it was not emphasized, the gang affiliation was not emphasized during clothing arguments. And in this case, it was specifically emphasized. And that, given the weakness of the government's case, that is what we contend with the basis for the jury reaching the conclusion to convict Jesse Colaccio. We believe that that is improper under most B.I. and that it infringes on the First Amendment and it also deprived Jesse of due process because such comments amounted to him having an unfair trial. Now, in addition to those basis for the reversal, Jesse Colaccio, he was entitled to, but did not receive a juvenile certification hearing. The law is clear in the Commonwealth that if a person is charged with murder, you don't need a juvenile certification hearing. But in this particular case, the charge against Jesse was aiding and abetting. And because of the aiding and abetting murder, that was not a charge that is subject to the automatic juvenile certification. And as such, Jesse had a due process right to have a juvenile certification hearing with respect to the aiding and abetting murder charge. He requested one. It was not given. And we think that that was a structural error which requires the reversal of the conviction. Furthermore, we feel that the undenying justice offense, the common law, also supports the reversal of the conviction because the Commonwealth Code clearly defies that. Notwithstanding anything in the Code, a district that has all of the offenses available in common law. And in common law, there is a defense between a principle and an offensory. And pursuant to that particular defense, Jesse was not deemed a principle, so therefore he could not be convicted of first-degree murder. So we believe that his conviction should be reversed on that ground as well. And if the panel does not have any further questions for me, I'd like to reserve for the remainder of my time for a moment. Mr. Long, this is Judge Levy. Can you hear me? Yes, Judge, I can. I'm trying to visualize how you would say this case could possibly be tried without reference to gangs. Because according to the witness, Eon, he was told by Jesse that he was ordered to commit this crime at the behest of the leader of the gang. Now, whether that is a real gang or a real leader or a fictitious one, we don't know. But at least that's what the witness said. Now, how could you visualize this case being tried without some evidence of who this person was and whether or not he ostensibly was being at least told by Jesse that he was speaking authoritatively as the head of the gang? How could you try this case without that evidence? Well, basically, the crux of the matter is that Jesse, the government's case, is that Jesse was instructed, according to their evidence, Jesse allegedly gave the instructions to Eon to stab, to kill Antonio. Now, at that point, the basis becomes, from my own perspective, what more is needed? If the government claims, well, Jesse gave this instruction, Eon followed it, what more is needed? That satisfies the criteria for aiding and abetting. So the gang then becomes superfluous evidence. I mean, it's not really necessary to show that Jesse gave the instruction. You don't need gang evidence to show that Jesse gave the instruction. Allegedly, you have Eon saying, well, Jesse told me to do this. Jesse told me to steal the sword. I stole the sword. Then Jesse told me to kill Eon. I killed Eon. So Eon thinks that gives the evidence, or that would be the evidence that would be necessary to at least support a charge of inciting and abetting. And the gang evidence on top of that can only do nothing but prejudice or claim the jury. OK. Would you like to reserve the rest of your time for rebuttal? Yes, Judge. OK. Mr. Lynch? Yes. Good morning, or good early afternoon, I guess. Kevin Lynch, Assistant Attorney General for the Northern Mariana Islands, representing the plaintiffs' faculty in this case. I would like to speak specifically to a couple of issues and areas that the court had questions in, and I think these are probably the areas that I can most helpfully address. Concerning the more recent question, how can you try this case without the evidence, the gang affiliation evidence, I believe that that was critical to being able to fully present the case to the jury and explain to the jury why a crime of this magnitude happened, because ordinarily a 14-year-old child will not go into someone's house, a friend's house, and stab them 37 times. And this demonstrates that Eon was operating under some mental state that caused him to create or commit this terrible crime, and it goes to show the magnitude of the threat that he perceived and why he would commit an act like this, because this is not ordinary conduct. This is not normal conduct. If somebody, I disagree with Mr. Long, if someone says, go into a house and steal a sword, most people are going to say, no, I'm not going to do that. Go into the house and kill somebody. No, I'm not going to do that. There has to be some motivation, some thing underneath the undercurrent that compels a person to do this. And in this particular case, the initial beating of Eon by Kevin Camacho in the presence of the defendant during what was characterized as a gang initiation that Eon didn't want to participate in, I think that certainly shows that here's a group of people who are willing to use force against you, Eon, if you don't do what we say. So that certainly shows that there is a real threat that Eon could perceive as a threat based on fact and not speculation, that if he does not do what he is told to, that there will be physical violence used to enforce or coerce what these people, Jesse and his brother, wanted to have done. Also at the scene of the stabbing was Kevin Camacho, who basically told Eon, well, you do what you have to do or you're going to get it. And the threat was not only against Eon, it was also against his parents. And I think we have to remember this is a 14-year-old child who is living out of his house on his own, basically very vulnerable under these circumstances, and I think we have to look at the totality of all these circumstances to explain why this act happened. So the relevancy, I think, was very clear. I don't think the prosecutor placed it out of perspective during his arguments. He repeatedly said, I don't want you to use this idea of a gang and association just for the purpose of convicting. It's here to explain why this happened. So I think the evidence was used for a proper purpose. It was presented to the jury in a proper way, and I think that it went a long way toward explaining to the jury and helping them understand that there is a case, why it happened, and also the criminal liability of the defendant, Jesse James Camacho, in the commission of this murder. Are you still there? Yes. Okay, thank you. I was getting some static on this end of the line. There was no out-of-court knowledge that, going to the question about you, there was no out-of-court knowledge or special indication that the truthfulness of the witness' testimony was being monitored. The comments concerning the credibility of the witness, I believe, were based on the facts that came out during the trial and the ability of all the persons, the jury, judge, prosecutor, defense counsel present in the courtroom who were able to evaluate the credibility of the witnesses from the stand as they testified. Well, I have this, Judge Nelson. I have a question about several of the comments that the prosecutor made, and let me tell you what those are. One is, quote, I find him to be a very believable witness, unquote. Quote, so he, in my opinion, is a very believable witness, unquote. And quote, there is absolutely nothing that would cause him to lie, unquote. Now, aren't those on their face solely a vouching by the prosecutor for the credibility of this witness? Well, I believe the Supreme Court found that there was some impropriety in those statements, but there was no hint that the prosecutor had extra record knowledge of the truthfulness. But I think when you look at the testimony of the individuals, you don't find that there's any special consideration being given to them, no special deal, no special leniency or promises. The Supreme Court concerning the I find him to be a very believable witness, the court found that there was actually very little personal opinion concerning, perhaps it would be better if that comment had not been made, but as far as whether that in itself would be enough to sway the jury or place the prestige of the prosecutor's office behind the witness, I don't believe that that comment, even in conjunction with the other comments, would be sufficiently strong that it would deny the defendant a fair trial. So you're making a harmless error argument, I take it? Well, yes, and I believe the Supreme Court found it that way. But I think there's, the prosecutor can, I believe, make an opinion about his perception of the witness from what he observed in the courtroom. And I think there was no evidence as opposed to why, and I think the prosecutor can point out the absence of fact that it would cause a witness to falsely testify. All right. Again, the comments of, in my opinion, is a very believable witness. Again, I think you can relate this to the testimony that came out and the absence of those factors that might cause a witness to exaggerate a story or fabricate testimony. Again, I guess I'm using the harmless error analysis, but I believe these are comments that are almost beyond a reasonable doubt in the context of the evidence as it was presented. And again, the jury was instructed that the statements of counsel are not evidence that should decide the case on the facts as they perceive them. I don't know if that's a comment that you want to respond to that I didn't address. I hope not. No, I think that's sufficient. Okay, thank you. Concerning the question of the certification hearing, I think where the Commonwealth differs with the defense is that aiding and abetting is not a specific charge and it is not a specific crime, it is a theory of criminal liability, and that is the function of our statute that abrogates the distinction between accessories before the fact or accessories in the second degree and principles. So the Supreme Court interpreted our statutes, interpreted our statutory scheme and determined that where we do have a kind of a catch-all statute that allows for the raising of common law defenses, and those would be defenses that are not codified such as self-defense, necessity, duress, any of these other common law defenses that have been recognized, but we do have a specific statute dealing with accomplice liability, that the accomplice liability statute is the one that is specifically oriented toward the conduct of such an accomplice that the defendant committed, and that you can read those two statutes in harmony and find that the aiding and abetting charge is just a theory of criminal liability for a first-degree murder. It is not, in fact, a separate charge that the defense maintains. Does the Court have any additional questions? As to that, is our review limited to the question of whether the Supreme Court's interpretation is a subterfuge to avoid a federal constitutional issue or an untenable interpretation? I believe it is, Your Honor. And the reason is that this is an interpretation of something that is strictly common-law by the highest court in the common law, and they, under Ferriero v. Borjas, should be the ultimate expositor of the law of the common law. And I believe that the scope of this Court's review of that question would be the same as Your Honor articulated, whether it's going to be a subterfuge to avoid review, et cetera. Anything else? We have no other questions, so unless you have something further, we'll hear. Your Honor, I'm just trying to respond to the questions that were brought up. I guess to summarize, this is not a case where First Amendment rights of association are implicated. I believe the gang admission evidence was properly placed in perspective, and it was used for a very legitimate purpose, although I wasn't able to find a case where a naming and abetting theory was involved. Cases such as Santiago's do indicate that you can use the existence of the gang to show some kind of motive, to explain why something happens. And that, I think, is part of the race justice of the whole offense, and I believe it's necessary to be able to show to the jury why things like this happen. The prosecutor's statements during... And I guess it's also important to note that the alleged errors by the prosecutor all occurred during closing arguments, so we're not looking at a situation where there were errors in opening statements or jury selection or the improper addition of evidence or things like that. These are all alleged errors that occurred during the closing argument, but they don't go so far as to imply that the prestige of the prosecutor's office is behind the witness, that the prosecution and the court are aligned against defense counsel. There's no indication that there's evidence outside the record that the prosecutor is considering to verify whether a witness is telling the truth. And so it really falls very far outside cases such as Roberts, Simtah, which I believe is cited in the briefs also, where really there was a very strong indication of evidence of somebody monitoring the testimony of a witness. In this case, I believe the harmless error analysis would apply to anything that appeared to be an expression of an opinion and that the errors were harmless beyond a reasonable doubt. Okay. Mr. Long? Yes. Thank you, Jess. Just briefly, with respect to obtaining evidence and the necessity for it, we point out that if Jesse ruled for a motion in limine at the beginning of the case in opposition to that motion in limine, the prosecution stated as follows, and it's on page 261 of their terms of record, I can't do my opening until I know how the court is going to rule on this question because definitely gang membership is part of the threat that weaves through this case. This was, if alleged to my theory of the case, is that this was part of a gang initiation. So at the beginning of the case, they were saying the gang evidence is definitely independent of the gang initiation. However, there was absolutely no tie-in to a gang initiation with respect to the murder of Antonio Zafala. Then after the case, they say, oh, this would show devious motivation. So the whole basis of what they're saying for the gang evidence shifted in its opposition and that also shows that the shift in rationalization for this evidence further shows that it's simply there to inflame and pressure the jury. And without any sort of limiting instruction from the court concerning the gang membership and evidence, this is just a tie-in prejudice issue to test the administration, particularly since the case is based only on the uncooperative testimony of Ian. Now, with respect to the review of the Commonwealth law issues, we agree that the standard is set forth in PR v. 4H. However, we point out that the statute clearly says notwithstanding any other provisions of the code and the Supreme Court does not point to any legislative history that suggests any exception to a defendant relying on common law defenses. So to that extent, we think that that deprives Jesse of his due process right and it amounts to either an untenable interpretation or it's a substitute to try to prevent a federal review of this particular right of Jesse to rely on common law defenses. And lastly, if the court is of the opinion that the various errors during closing are not insufficient in and of themselves for reversal of the conviction, then we believe that all the errors together in this case, the cumulative effect entitled Jesse to a new trial specifically given the weakness of the government state and that the principal evidence against Jesse is the person who actually perpetrated the crime. And in that context, we believe these errors serve to make it highly prejudicial to Jesse with respect to the charges against him. Thank you very much. All right, counsel. Thank you for your argument in this case. And we'll now turn to the next case, which is the Shen case.
judges: Leavy, Rymer, Tg Nelson